**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 09:06 AM May 2, 2012**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| ROBERT WILLIAM LOVEDAY | ) | CASE NO. 10-64110 |
| and TANA LYNN LOVEDAY, | ) | |
| | ) | JUDGE RUSS KENDIG |
| Debtors. | ) | |
| | ) | **MEMORANDUM OF OPINION (NOT** |
| | ) | **FOR PUBLICATION)** |
| | ) | |

  Now before the court is the Debtors' motion to retain oil and gas royalties filed on October 25, 2011.

  The court has jurisdiction over this case pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on April 4, 2012. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

  This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

  On October 25, 2011, Debtors filed a motion to retain oil and gas royalties ("motion"). Debtors assert that a third party has offered to purchase oil and gas rights to Debtors' real property for the amount of $9,813.67. After payment of taxes in the amount of 18%, Debtors would receive $8,047.21. Debtors seek to retain the monies, using $3,100.00 for post-petition medical

bills, $1,000.00 for car repairs, $600.00 for new appliances, and the remainder of $3,347.21 as savings toward the purchase of more reliable transportation and future medical bills.

On November 1, 2011, the chapter 13 trustee ("Trustee") filed an objection to Debtors' motion on the basis that the proceeds from the sale represent disposable income that must be committed to Debtors' chapter 13 plan for distribution to creditors. Additionally, Trustee argues that the expenses listed in the motion are already provided for in Debtors' budget.

On December 7, 2011, the court held a hearing on the motion and provided parties an opportunity to brief the issue. Trustee was provided until January 31, 2012 to brief the issue and Debtors were provided until February 21, 2012 to brief the issue.

On January 31, 2012, Trustee filed her brief in support of objection to motion. In her brief, Trustee argues that the proceeds received from the sale are part of Debtors' bankruptcy estate and must be included in the hypothetical liquidation of the bankruptcy estate pursuant to 11 U.S.C. § 1325(a)(4). Alternatively, Trustee argues that the expenses that Debtors seek to pay with the proceeds are already included in Debtors' budget.

Debtors filed a brief in support of their motion on February 21, 2012. Debtors argue that the oil and gas rights were disclosed as part of the value of real estate because ownership in real property includes everything above and below the surface. Debtors contend that it would be an undue burden for debtors to determine if there are any valuable minerals under the property and determine what value if any becomes part of the estate. Debtors similarly argue that the oil and gas rights are not after-acquired property because they only enhanced the value of their property rights and did not acquire new property. Debtors compare the sale of oil and gas rights to debtors who farm or cut timber on land for their value.

Schedule A reports that the Debtor-husband has a one-third interest in real property located at 3774 Stonecreek Road in Stone Creek, Ohio, valued at $6,600.00, which is the subject of the oil and gas royalties. Schedule I reports that the Debtors have $2,648.67 in combined average monthly income, including $18.00 in gas and oil well royalties.[1] Schedule J reports that the Debtors incur $2,448.67 in expenses per month.

The confirmed plan provides for monthly payments of $200.00, increasing to $450.00 in March of 2012, for a period of thirty-six months with a distribution of 32% to general unsecured creditors. The order confirming plan, entered on December 23, 2010, provides that:

> All property of the estate scheduled in accordance with Bankruptcy Rule 1007(h), vest in the debtor(s) pursuant to 11 USC Section 1327(b). All property of the estate that is not properly scheduled or any property that is acquired subsequent to the filing of the petition does not vest to the debtor(s) and remains property of the estate unless Court ordered.

---

[1] The Debtors' Statement of Financial Affairs reports that the Debtors received $29.23 in royalties from H Ergon Oil in 2009.

**ISSUE**

The issue that arises in this matter is whether the Debtors scheduled the value of the oil and gas rights by listing their interest in the real property on Schedule A and, thus, the oil and gas rights vested in the Debtors at the time of confirmation under the order confirming plan, or whether the oil and gas rights were not scheduled with the value of the real property on Schedule A and, thus, remain property of the estate under the order confirming plan.

**LAW AND ARGUMENT**

I.  Ownership of Oil and Gas Rights

There are two basic theories of ownership of gas and oil rights. Under the ownership in place theory, "the owner of a tract of land holds the fee in oil and gas underlying the boundaries of his property even though the oil and gas are not the subject of actual possession until brought to the surface." In re Hillsborough Holdings Corp., 207 B.R. 229, 303 (Bankr. M.D. Fla. 1997) (quoting NCNC Tex. Nat'l Bank, N.A. v. West, 631 So. 2d 212, 221-24 (Ala. 1993)). Such rights may be "severed from the balance of the land, by grant or reservation, in the same manner as in the case of coal or other solid minerals," creating a separate and distinct interest that can be owned to the same extent as the surface. The Pure Oil Co. v. Kindall, 156 N.E. 119, 123 (Ohio 1927). Conversely, the nonownership theory "recognizes the migratory nature of oil and gas, [and] requires actual possession to establish ownership of the resource, and the right held by the landowners is 'the right to reduce the oil and gas to possession or to sever this right for economic consideration.'" Hillsborough Holdings, 207 B.R. at 303 (quoting West, 631 So. 2d at 223).

Courts in Ohio are split regarding the treatment of oil and gas rights to an owner. George A. Bibikos & Jeffrey C. King, *A Primer on Oil and Gas Law in the Marcellus Shale States*, 4 TEX. J. OIL, GAS & ENERGY L. 155, 190 (2009). In Pure Oil, the court discussed that "[i]t is well established that in Ohio oil and gas in place are the same as any part of the realty." 156 N.E. at 201. Similarly, another court discussed that "it is a well settled law that petroleum oil is a mineral and is a part of the realty." Wiseman v. Cambria Prods. Co., 572 N.E.2d 759, 762 (Ohio Ct. App. 1989) (quoting Hardesty v. Harrison, 6 Ohio Law Abs. 445 (1928)).

Conversely, other cases discuss that oil and gas belong to no one until it is reduced to actual possession. *See* Kelley v. Ohio Oil Co., 49 N.E. 399, 401 (Ohio 1897) ("Petroleum oil is a mineral, and while in the earth it is part of the realty, and should it move from place to place by percolation or otherwise, it forms part of that tract of land in which it tarries for the time being, and if it moves to the next adjoining tract, it becomes part and parcel of that tract; and it forms part of some tract, until it reaches a well and is raised to the surface, and then for the first time it becomes the subject of distinct ownership separate from the realty, and becomes personal property."); *accord* Back v. The Ohio Fuel Gas Co., 113 N.E.2d 865, 867 (Ohio 1953) ("Possession of oil and gas, having as they do a migratory character, can be acquired only by severing them from the land under which they lie, and in effect the instrument of conveyance . . . is no more than a license to effect such a severance. The very sale of oil and gas, separate and apart from the real estate surface, constitutes, in law, a constructive severance such as occurs in the case of sale of standing timber or growing crops.").

This court finds that the nonownership theory is the more sensible approach to the ownership of oil and gas rights for purposes of valuation in bankruptcy. Given the migratory nature of oil and gas, it is premature to give value to the oil and gas before they are extracted from the land. The varying price of oil and gas affects the exploration of real property for their existence and, therefore, to value real property to include the value of oil and gas is near impossible. Therefore, the value of the oil and gas cannot be determined to any degree until the oil and gas are extracted from the land or at least until an offer is made to a debtor to purchase the oil and gas rights to specific real property.

Even if it is known that oil and gas reside under the real property, a neighbor's drilling may deplete the oil and gas from underneath the property before it is extracted from the real property. While drilling companies may be eager to purchase oil and gas rights, there remains a chance that the oil and gas will not be intact when drilling commences. Due to this uncertainty, it is near impossible to value oil and gas before extraction occurs. Thus, for purposes of valuation in bankruptcy, it is sensible that oil and gas are not valued until they are extracted from the real property and, therefore, because a debtor schedules real property, it does not follow that the scheduling of the real property includes oil and gas rights.

II.   Disclosure of Retention of Rights Related to Real Property

11 U.S.C. § 521(1) "requires a debtor to file 'a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs.'" Lewis v. Weyerhaeuser Co., 141 Fed. Appx. 420, 424 (6th Cir. 2005). Assets include "all legal or equitable interests of the debtor in property as of the commencement of the case." In re Batten, 351 B.R. 256, 258 (Bankr. S.D. Ga. 2006) (quoting *Collier on Bankruptcy P* 521.06 [3] [a] (15th ed. Rev. 2006)).

"Disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." In re Kimberlin, 2012 U.S. Dist. LEXIS 52794, at 9-10 (S.D. Ohio Apr. 16, 2012) (quoting Lewis, 141 Fed. Appx. at 424); *accord* In re Coastal Plains, Inc., 179 F.3d 197, 208 (5th Cir. 1999); Harrah v. DSW, Inc., 2012 U.S. Dist. LEXIS 16455, at 5 (N.D. Ohio Feb. 9, 2012). "[I]t is very important that a debtor's bankruptcy schedules and statement of affairs be as accurate as possible, because that is the initial information upon which all creditors rely." Coastal Plains, 179 F.3d at 208; *accord* Harrah, 2012 U.S. Dist. LEXIS 16455, at 6.

In instances where a debtor retains the oil and gas rights to his property, he has a duty to disclose the retention of these rights on his schedules. For the reasons detailed above, the debtor cannot assert that the oil and gas rights are included in the value given to the real property on his schedules. When a debtor schedules real property, the court assumes that the debtor refers only to the top surface rights associated with the real property unless the debtor specifically schedules the retention of other rights associated with the real property. Given how many different rights can be associated with real property, e.g. easements, oil and gas rights, and countless other rights, a debtor need only indicate whether any of these rights have been conveyed, specifically listing which have been conveyed, or indicate that all rights associated with the real property are still

retained.

The debtor cannot place the burden on the trustee to investigate whether he has previously sold any rights associated with the real property, including the oil and gas rights, or whether he retains such rights. It is too large a burden for the trustee to investigate in every case whether a debtor retains oil and gas rights when the debtor in most cases, if not all cases, knows the rights he retains, or certainly knows more than the trustee, and can disclose that information on his schedules. In many cases, property records may exist for hundreds of years and the trustee would have to complete an inordinate amount of research in every case to determine the current rights owned by the debtor.

In the instant matter, the Debtors contend that listing the interest in the real property on Schedule A is sufficient to disclose the value of the oil and gas rights. For the reasons set forth above, the court disagrees. Schedule A reports that the Debtor-husband has a one-third interest in real property located at 3774 Stonecreek Road in Stone Creek, Ohio, valued at $6,600.00, but fails to disclose the retention of oil and gas rights related to the real property. While Schedule I reports that the Debtors were receiving gas and oil well royalties of $18.00 per month at the time of filing,[2] it is not sufficient to determine whether the Debtors retain an interest in the oil and gas rights. There can be numerous types of oil and gas rights and the existence, or lack thereof, of one implies nothing as to other rights. For example, rights may, or may not, be divided by various depths beneath the surface.

### III. Retention of Proceeds

Since the retention of oil and gas rights were not disclosed and not considered to be scheduled with the value of the real property, under the terms of the order confirming plan, they remain property of the estate.[3] The Debtors' failure to disclose the retention of oil and gas rights does not foreclose the later sale of the oil and gas rights and the Debtors' retention of the proceeds from the sale. But the retention of the proceeds is subject to court approval.

In the instant matter, the Debtors seek to retain $8,047.21 in net proceeds from the sale of oil and gas rights and will use $3,100.00 for post-petition medical bills, $1,000.00 for car repairs, $600.00 for new appliances, and the remainder of $3,347.21 as savings toward the purchase of more reliable transportation and future medical bills. Trustee objects to the retention on the basis that the Debtors have already included at least some of these expenses in their budget.

First, Trustee notes that the Debtors included a monthly expense of $150.00 for medical and dental expenses on Schedule J. Trustee contends that the Debtors should have $2,400.00 available in the medical and dental expenses category to pay for some of the $3,100.00 in post-petition medical bills. If the Debtors have already utilized the monies allocated for medical

---

[2] The court presumes that these royalties are related to a different layer of oil and gas under the real property since the Debtors could not have sold the oil and gas rights currently at issue if they had previously leased or sold the same oil and gas rights.

[3] If the Debtors had disclosed the retention of the oil and gas rights on their schedules, the oil and gas rights would have been considered properly scheduled and, under the order confirming plan, the oil and gas rights would have vested in the Debtors at confirmation.

and dental expenses, the trustee contends that the Debtors must account for their use before being allowed to retain the proceeds for medical bills.

The Debtors assert that their medical and dental expenses exceed the budgeted amount of $150.00. In support of their assertion, the Debtors detail medical and dental expenses that average $346.00 per month, including prescription drugs of $201.32 per month, breathing machine at $120.00 per month, and at least one doctor's visit per month at $25.00. In addition, since the petition date, one of the Debtors was hospitalized, resulting in a bill in excess of $1,000.00.

The court calculates that in the sixteen months from the petition date through the filing of briefs on this motion, the Debtors have expended $5,536.00 in medical and dental expenses[4] notwithstanding the hospitalization. When the budgeted amount of $2,400.00 is subtracted from the total expenditure of $5,536.00, the Debtors expended $3,136.00 in excess of the budgeted amount. This is nearly the exact amount that the Debtors are seeking to retain for post-petition medical bills. Given the Debtors' ages, as well as the cost of prescription drugs and medical care, the court believes that the amount expended on medical and dental expenses is reasonable. The court will allow the Debtors to retain $3,100.00 of the gas and oil proceeds for their post-petition medical bills.

Second, Trustee notes that the Debtors included a monthly expense of $100.00 for home maintenance. Trustee contends that the Debtors should have $1,600.00 available in the home maintenance category to pay for the $600.00 of appliances. The Debtors make no mention of the need for the appliances or how the $1,600.00 budgeted for home maintenance was expended. However, the Debtors set forth the National and Local Standards for housing, food, clothing, etc. and demonstrate that their monthly expenses are well below the standards in many categories. Because the Debtors' expenses are below the National and Local Standards in many instances, the court will allow the Debtors to retain $600.00 for appliances.

Third, Trustee argues that the necessity for car repairs of $1,000.00 has not been established. The Debtors argue that they have two vehicles, a 2000 Ford F150 and a 2004 Chevrolet Blazer. The Ford is rusting out, requires a new exhaust system, water pump, and catalytic converter.[5] The Debtors budgeted just $150.00 on Schedule J for transportation, which includes both repairs and maintenance, as well as gas. The Debtors note that the Local Standard for vehicle operating expenses is $420.00. The court believes that the budgeted amount is so low that it barely covers gas for two vehicles and fails to pay for repairs and maintenance to aging vehicles. The court will allow the Debtors to retain $1,000.00 for car repairs.

Finally, Trustee contends that the savings of $3,347.21 for future reliable transportation and medical bills is speculative. As discussed above, the Debtors' monthly medical bills and transportation expenses exceed the budgeted amounts for those categories. The court believes that the Debtors will have future medical and transportation expenses that are not covered by the $150.00 budgeted amount for each category on Schedule J and that these expenses are reasonable.

---

[4] Using the Debtors' average monthly expenditure of $346.00 for sixteen months results in a total expenditure of $5,536.00.

[5] The Debtors reference a new "cadillac converter," but the court assumes that the Debtors actually mean a catalytic converter.

The court will allow the Debtors to retain $3,347.21 in savings for these future expenses.

## **CONCLUSION**

Accordingly, the court will allow the Debtors to retain the $8,047.21 in proceeds from the sale of oil and gas rights.  An order will be issued contemporaneously with this memorandum of opinion.

#	#	#

**Service List:**

Nicole L. Rohr
Thrush & Rohr LLC
4410 22nd Street NW
Canton, OH 44708

Robert William Loveday
Tana Lynn Loveday
1919 Wagner Street
Dover, OH 44622

Toby L Rosen, Trustee
400 W Tuscarawas St
Charter One Bank Bldg
4th Floor
Canton, OH 44702